1

2

3

4

5

6

7

8                            UNITED STATES DISTRICT COURT
                             WESTERN DISTRICT OF WASHINGTON
9                                     AT TACOMA

10    ROLANDO HERNANDEZ,

11              Plaintiff,

12         v.                                        Case No. C04-5539 FDB

13    CITY OF VANCOUVER and MARK                     ORDER GRANTING DEFENDANTS'
      TANNINEN,                                      MOTION FOR SUMMARY
14                                                   JUDGMENT

15              Defendant.

16

17        This matter comes before the Court on Defendants' Motion for Summary Judgment seeking

18   dismissal of Plaintiff's claims for employment discrimination.  After reviewing all materials submitted

19   by the parties and relied upon for authority, the Court is fully informed and hereby grants the motion

20   of the City of Vancouver and Mark Tanninen and dismisses Plaintiff's case for the reasons described

21   below.

22                             **INTRODUCTION AND BACKGROUND**

23        Plaintiff Rolando Hernandez is a Hispanic male employed as a mechanic by the City of

24   Vancouver.  Plaintiff has been employed by the City for over ten years and continues to work for the

25   City.  Hernandez was hired in 1995 to work in the Operations Center as a mechanic.  In 1999,

26   ORDER - 1

1  Hernandez applied for and received a transfer from the Operations Center to the Fire Shop to work as

2  an Emergency Equipment Mechanic (EEM).  The qualifications for an EEM are higher and include

3  three years of journey level experience, as well as additional certifications beyond those required of an

4  operations Shop mechanic.  The Fire Shop only repairs emergency vehicles.  The expectations are

5  higher and the need for perfection is magnified as emergency vehicles must be in optimal working

6  condition.  Because of these factors, the EEM's earn nearly 18% more in wages than Operations

7  Center mechanics.

8          Plaintiff acknowledged receipt of and agreed to familiarize himself with the employment

9  policies of the City of Vancouver.  These policies include an anti-harassment policy which forbids

10  racial harassment, sets forth a complaint procedure and prohibits retaliation.

11          Plaintiff's complaint alleges that he received the "cold shoulder" from the first day he began

12  work in the Fire Shop.  Plaintiff cannot, however, recall any specific incidents when his co-workers

13  refused his requests for assistance.  Hernandez also contends he was assigned demeaning jobs because

14  he was put on more physical tasks, such as changing springs and because he was assigned a lot of oil

15  changes.  Plaintiff, however, admits that all mechanics except one were changing springs and he is

16  unaware how often others were changing springs or performing oil changes.  Plaintiff also notes that

17  two or three co-workers have specialties that require a lot of their time.[1]

18          Plaintiff alleges that his work and tools were sabotaged.  These alleged incidents of sabotage

19  were investigated by the City and no evidence found that his tools or work were intentionally

20  damaged.  When Plaintiff's drill was damaged, his supervisor immediately offered to have the drill

21  repaired and the City provided a replacement drill at no cost to Plaintiff.  Concerning his work,

22  _____

23          [1]Plaintiff has filed an affidavit in opposition to the motion for summary judgment which
   attempts to clarify his deposition testimony.  Plaintiff cannot create an issue of fact by submitting an
24  affidavit that contradicts his prior deposition testimony. See Foster v. Arcata Assocs., 772 F.2d
   1453, 1462 (9th Cir.1985) and Radobenko v. Automated Equip. Corp., 520 F.2d 540, 543-44 (9th
25  Cir.1975).

26  ORDER - 2

1 Hernandez alleges sabotage in that a vehicle he had worked on was discovered to have broken lug

2 nuts, an oil leak due to a loose oil pan plug, a coolant leak due to a loose radiator cap, a fuel leak due

3 to a missing fuel filter clip and an oil leak because of multiple gaskets on the filter.  Plaintiff has

4 offered no evidence that these problems were a result of the actions of others, rather than his own

5 errors.  He received no discipline or counseling for any of these incidents.

6      Plaintiff also alleges that he was not allowed to check his email on company time while others

7 were.  However, all mechanics were counseled for spending too much time on personal email.

8 Plaintiff also complains about vacation time requests.  However, he acknowledges that there were

9 certain periods of time where work was heavier and required more of the shop personnel to be on

10 duty.

11      In June of 2002, Hernandez had a meeting with his supervisor and a member of the City's

12 Human Resources Department concerning incidents in which plaintiff made errors in repairing

13 emergency vehicles.  Plaintiff was provided a document outlining four incidents that were considered

14 serious and that compromised the Fire Shop's ability to provide regular and responsive services.

15 Plaintiff admitted to the mistakes in work performance.

16      In November, 2004 Hernandez received written discipline for two additional errors.

17 Hernandez was given eight hours of suspension without pay as well as a written reprimand.  The

18 discipline notice provided that Plaintiff needed to improve on accuracy and thoroughness of his work.

19 Plaintiff was put on notice that his performance would be reviewed in sixty days and that his failure to

20 immediately improve, and sustain improvement, would lead to further disciplinary action, which

21 would most likely include termination of employment.

22      A month later, in December, 2004, Plaintiff and a co-worker had an altercation in the parking

23 lot of the Fire Shop.  The day after this incident, Plaintiff was put on administrative leave pending a

24 fitness for duty evaluation.  Plaintiff explains that after he completed the evaluation he requested a

25 transfer from the Fire Shop to the Operations Center.

26  ORDER - 3

1    Hernandez transferred back to the Operations Center pursuant to an "Agreement and

2  Memorandum of Understanding."  The memorandum specifically provides that the City agrees to the

3  request for transfer and that an additional letter of discipline is imposed.  The letter of discipline states

4  that Plaintiff had failed to improve his accuracy and thoroughness as required by his performance

5  evaluation and had engaged in a verbal exchange with a co-worker in which he used profane language

6  and hand gestures.

7    Hernandez asserts that his supervisor, Defendant Mark Tanninen initially confirmed Plaintiff's

8  allegations of discrimination and after consulting with City personnel, refused to cooperate with

9  Plaintiff's counsel.[2]  However, Mark Tanninen's testimony does not support these allegations.

10    Hernandez filed a charge of discrimination with the Equal Employment Opportunity

11  Commission (EEOC) claiming discrimination based on national origin.  The charge asserts that during

12  his employment, Hernandez was subjected to a hostile work environment.  Co-workers ostracized

13  Hernandez, his tools were damaged and he was subject to unwarranted discipline.  Hernandez

14  contended that these actions were based on his national origin in violation of Title VII of the Civil

15  Rights Act of 1964.  The EEOC investigated the charge and issued its Notice of Right to Sue.

16    Plaintiff served a tort claim notice to the City of Vancouver and subsequently commenced this

17  action.  Plaintiff asserts claims for employment discrimination, retaliation and hostile work

18  environment under 42 U.S.C. § 2000 (Title VII), 42 U.S.C. §1981, 42 U.S.C. § 1983, 42 U.S.C.

19  §1985 and Washington Law Against Discrimination State, RCW 49.60.

20                              **SUMMARY JUDGMENT STANDARD**

21    Summary judgment is appropriate where there is no genuine issue of material fact and the

22  _____

23    [2]Attorney Gregory Ferguson has filed an affidavit which purports to set forth what Mark
    Tanninen stated to Mr. Ferguson in confirming the allegations of discrimination.  This is inadmissible
24  hearsay and will disregarded.  See, Orr v. Bank of America, NT & SA, 285 F.3d 764 (9th Cir. 2002);
    UA Local 343 v. NorCal Plumbing, Inc., 48 F.3d 1465, 1473 (9th Cir.1995).
25

26  ORDER - 4

1  moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).  The moving party

2  bears the initial burden of demonstrating the absence of a genuine issue of material fact. <u>Celotex</u>

3  <u>Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).  Once the moving party has met this burden, the

4  opposing party must show that there is a genuine issue of material fact for trial.  <u>Matsushita Elec.</u>

5  <u>Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986).   A dispute as to a material fact is

6  "genuine" if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving

7  party.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).  The opposing party may not rest

8  upon the mere allegations or denials of the moving party's pleading, but must present significant and

9  probative evidence to support its claim.  <u>Intel Corp. v. Hartford Accident & Indem. Co</u>., 952 F.2d

10  1551, 1558 (9th Cir. 1991).  For purposes of this motion, reasonable doubts as to the existence of

11  material facts are resolved against the moving party and inferences are drawn in the light most

12  favorable to the opposing party.  <u>Addisu v. Fred Meyer, Inc</u>., 198 F.3d 1130, 1134 (9th Cir. 2000).

13  Summary judgment is mandated where the facts and the law will reasonably support only one

14  conclusion.

15                    **RETALIATION AND EXHAUSTION OF ADMINISTRATIVE REMEDIES**

16         A prerequisite to subject matter jurisdiction over a federal discrimination claim is exhaustion

17  of administrative remedies.  <u>Lyons v. England</u>, 307 F.3d 1092, 1103-04 (9th Cir. 2002); <u>B.K.B. v.</u>

18  <u>Maui Police Dep't</u>, 276 F.3d 1091, 1099 (9th Cir. 2002).   Exhaustion of administrative remedies

19  requires that the complainant file a timely charge with the EEOC, thereby allowing the agency time to

20  investigate the charge. See, 42 U.S.C. § 2000e-5(b); see also, <u>Lyons</u>, at 1104; <u>B.K.B</u>.,.at 1099.

21  "Incidents of discrimination not included in an EEOC charge may not be considered by a federal court

22  unless the new claims are like or reasonably related to the allegations contained in the EEOC charge."

23  <u>Lyons</u>, at 1104; <u>Green v. Los Angeles County Superintendent of Sch</u>., 883 F.2d 1472, 1475-76 (9th

24  Cir. 1989).  Plaintiff has failed to exhaust his EEOC remedies in regard to the retaliation claim.  The

25  text of the charge simply alleges national origin discrimination based on disparate treatment and

26   ORDER - 5

1  hostile work environment.  A claim of retaliation is not reasonably related to allegations contained in

2  the EEOC charge.  Plaintiff did not exhaust administrative remedies on his retaliation claim.

3  Accordingly, this Court lacks jurisdiction over the retaliation claim.

4  **DISPARATE TREATMENT AND RETALIATION**

5  The elements necessary to establish a prima facie case of discrimination or retaliation are the

6  same under federal and state law.  Manatt v. Bank of America, NA, 339 F.3d 792, 797 (9th Cir. 2003)

7  (plaintiff must meet the same standards in proving a § 1981 claim that he must meet in establishing a

8  claim under Title VII); Sischo-Nownejad v. Merced Cmty. Coll. Dist., 934 F.2d 1104, 1112 (9th Cir.

9  1991).(elements of cause of action under § 1983 are the same as those under Title VII); Hernandez v.

10  Spacelabs Medical Inc., 343 F.3d 1107, 1112 (9th Cir. 2003); Hill v. BCTI Income Fund-I, 144

11  Wn.2d 172, 23 P.3d 440, 446 (2001)(Washington has adopted the federal protocol in discrimination

12  cases brought under state and common law).

13  Motions for summary judgment in cases alleging disparate treatment discrimination are

14  analyzed under the burden-shifting framework established in McDonnell Douglas Corp. v. Green, 411

15  U.S. 792 (1973).  Under that framework, a plaintiff must first establish a prima facie case of

16  discrimination. The burden of production then shifts to the defendant to show legitimate,

17  non-discriminatory reasons for defendant's action.  The burden then shifts back to the plaintiff to

18  show that the defendant's reasons were pretextual.  Despite this burden shifting, the ultimate burden

19  of persuading the trier of fact that the employer intentionally discriminated remains at all times with

20  the plaintiff.  Ray v. Henderson, 217 F.3d 1234, 1240 (9th Cir. 2000); Norris v. City and County of

21  San Francisco, 900 F.2d 1326, 1329 (9th Cir. 1990).

22  To make out a prima facie case of disparate treatment, Hernandez must show that: (1) he

23  belonged to a protected class; (2) he was performing his job in a satisfactory manner; (3) he was

24  subjected to an adverse employment action; and (4) similarly situated employees not in his protected

25  class received more favorable treatment. Kang v. U. Lim America, Inc., 296 F.3d 810, 818 (9th Cir.

26  ORDER - 6

1   2002); Chuang v. Univ. of California Davis, 225 F.3d 1115, 1123 (9th Cir. 2000).

2   It is undisputed that Rolando Hernandez is a member of a protected class; a Hispanic.

3   Plaintiff has failed to show that he performed his job in a satisfactory manner.  In light of the

4   written discipline outlining specific incidents in which Hernandez made serious errors in repairing

5   emergency vehicles, Plaintiff cannot show that he was performing his job in a satisfactory manner.

6   It also appears that Plaintiff did not suffer an adverse employment action.  The employment

7   action was taken at Plaintiff's request for a transfer back to the Operations Center.

8   A prima facie case of retaliation requires the Plaintiff show that (1) he engaged in protected

9   activity, such as filing of complaint alleging racial discrimination, (2) employer subjected him to

10  adverse employment action, and (3) causal link exists between protected activity and adverse action.

11  Manatt v. Bank of America, NA, 339 F.3d 792, 800 (9th Cir. 2003).  Plaintiff has failed to present any

12  evidence that the discipline or transfer has a causal relationship to a protected activity, such as

13  complaints of racial discrimination.

14  Even were Plaintiff able to make a prima facie case of discrimination, the City has set forth a

15  legitimate, nondiscriminatory reason for the discipline and transfer of Plaintiff.  See, Manatt, at 801-

16  02.  Plaintiff has provided no evidence that the legitimate explanation was pretexual.

17  The Defendants are entitled to summary judgment on Plaintiff's disparate treatment

18  discrimination and retaliation claims.

19  **HOSTILE WORK ENVIRONMENT**

20  To establish prima facie hostile work environment claim under either Title VII or § 1981,

21  employee must raise triable issue of fact as to whether (1) he was subjected to verbal or physical

22  conduct because of his national origin, (2) conduct was unwelcome, and (3) conduct was sufficiently

23  severe or pervasive to alter conditions of his employment and create abusive work environment.

24  Manatt v. Bank of America, NA, 339 F.3d 792, 798 (9th Cir. 2003).  A hostile work environment

25  exists when the work place is permeated with discriminatory intimidation, ridicule, and insult that is

26  ORDER - 7

1   sufficiently severe or pervasive as to alter the condition of the victim's employment and create an

2   abusive working environment. <u>Faragher v. Boca Raton</u>, 524 U.S. 775, 786 (1998).  The conduct must

3   be severe or pervasive enough to create an objectively hostile or abusive work environment; an

4   environment a reasonable person in the plaintiff's position would find hostile or abusive considering all

5   the circumstances. <u>Faragher</u>, at 787; <u>Oncale v. Sundowner Offshore Services, Inc</u>., 523 U.S. 75, 81

6   (1998); <u>Ellison v. Brady</u>, 924 F.2d 872, 879 (9th Cir.1991).  The assessment of whether an

7   environment is objectively hostile "requires careful consideration of the social context in which the

8   particular behavior occurs and is experienced by its target." <u>Oncale</u>, at 81.  The victim must perceive

9   the environment as hostile; the conduct must actually alter the conditions of the victim's employment.

10  <u>Harris v. Forklift Systems, Inc</u>., 510 U.S. 17, 21-22 (1993).  Whether an environment is hostile or

11  abusive depends on all the circumstances including; the frequency of the discriminatory conduct; it's

12  severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and

13  whether it unreasonably interferes with an employee's work performance.  <u>Harris</u>, at 23; <u>Clark County

14  School Dist. v. Breeden</u>, 532 U.S. 268, 271 (2001).

15        The Plaintiff's allegations fall short of the severity of conditions that constitute a hostile work

16  environment.  See, <u>Vasquez v. County of Los Angeles</u>, 349 F.3d 634 (9th Cir. 2003).

17        The Defendants are entitled to summary judgment dismissing Plaintiff's hostile work

18  environment claim.

**SECTION 1985 CONSPIRACY**

20        Hernandez seeks relief under 42 U.S.C. § 1985 for the same discriminatory and retaliatory

21  acts alleged in his Title VII and § 1983 claims. "[T]he absence of a section 1983 deprivation of rights

22  precludes a section 1985 conspiracy claim predicated on the same allegations.", 866 F.2d 1175, 1182

23  (9th Cir.1989); see also, 824 F.2d 735, 739 (9th Cir.1987).

24         To prove a violation of section of § 1985 which prohibits conspiracies to deprive any person

25  of his or her civil rights, plaintiff must show some racial, or perhaps otherwise class-based, invidiously

26   ORDER - 8

1   discriminatory animus behind the conspirators' action; the conspiracy, in other words, must aim at a

2   deprivation of the equal enjoyment of rights secured by the law to all.  Orin v. Barclay,

3   272 F.3d 1207, 1217 (9th Cir. 2001).  To bring a cause of action successfully under § 1985(3), a

4   plaintiff must allege and prove four elements: (1) a conspiracy; (2) for the purpose of depriving, either

5   directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal

6   privileges and immunities under the laws; and (3) an act in furtherance of this conspiracy; (4) whereby

7   a person is either injured in his person or property or deprived of any right or privilege of a citizen of

8   the United States.  Sever v. Alaska Pulp Corp., 978 F.2d 1529, 1536 (9th Cir. 1992).

9       Plaintiff alleges that City personnel and Mark Tanninen acted in concert to deter or subvert

10  investigations into defendant's actions, to cover up their actions, and to otherwise preclude Plaintiff

11  from pursuing his rights.  Plaintiff has produced no evidence in support of these allegations. There is

12  no evidence of conspiracy. There is no evidence of race-based discriminatory animus.  Defendants are

13  entitled to summary judgment on Plaintiff's § 1985 conspiracy claim.

14                              **CONCLUSION**

15      For the reasons set forth above, Defendants City of Vancouver and Mark Tanninen are

16  entitled to summary judgment of dismissal of Plaintiff's claims in their entirety.

17      ACCORDINGLY,

18      IT IS ORDERED:

19      Defendants' Motion for Summary Judgment [DKT. #46] is **GRANTED**, and this case

20  dismissed in its entirety.

21      DATED this 24TH day of July, 2006.

22

23                              _____
                                FRANKLIN D. BURGESS
24                              UNITED STATES DISTRICT JUDGE

25

26   ORDER - 9