HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

ROLANDO HERNANDEZ,

          Plaintiff,

   v.

CITY OF VANCOUVER,

          Defendant.

CASE NO. C04-5539 RBL

ORDER

THIS MATTER is before the Court following the mistrial in this matter in June 2012, and the Court's subsequent determination that Thomas Booth acted in contempt of Court during those proceedings. [*See* Dkt #301]. Remaining for the Court's determination is the amount of fees and costs to impose on Mr. Booth as a result.

The City of Vancouver seeks a total of $195,150.08 in fees and costs, consisting of the following:

CITY"S REQUESTED FEES AND EXPENSES

| | |
|---|---|
| Total Incurred Pre-Trial Fees and Expenses | $109,038.55 |
| Anticipated Fees and Costs for New Trial | $22,410.00 |
| Post-Trial Fees and Expenses Prior to Contempt Hearing | $33,447.09 |

| | |
|---|---|
| Post-Trial Fees and Expenses After Contempt Hearing | $30,354.44 |
| TOTAL | $195,150.08 |

[*See* Dkt. #s 300 and 304]. This amount includes fees and costs incurred at the contempt hearing [$11,715.69], and it includes fees the City incurred in hiring Chris Hardman, an outside attorney, to represent Debra Quinn in connection with it [$18, 538.75]. The City's Request is supported by the Declarations of Robert Christie (the City's lead attorney in this matter) and Robert Gould (an expert hired by the City to opine about the reasonableness of the fee request).

    Mr. Booth concedes that some award is appropriate, but, through his expert, Tom Vertetis, argues that some of the fees and costs requested were not necessitated by the mistrial and should not be awarded. His disputes are in three primary areas: (1) He opines that not all requested pre-trial fees and costs should be awarded; (2) his recommended award does not include a component for fees and costs that will be incurred in preparing for re-trial; and (3) he does not include any of Mr. Hardman's time. Mr. Booth's expert's recommendations are set forth in the table below.

BOOTH'S RECOMMENDED FEES AND EXPENSES

| CATEGORY | FEES AND COSTS | [vs. CITY'S REQUEST] |
|---|---|---|
| Total Incurred Pre-Trial Fees and Expenses | $46,021.64 | [$63,016.91 reduction] |
| Anticipated Fees and Costs for New Trial | -0- | [$22,410.00 reduction] |
| Post-Trial Fees and Expenses Prior to Contempt Hearing | $33,447.09 | [No reduction] |
| Post-Trial Fees and Expenses After Contempt Hearing | $11,715.69 | [$18, 538.75 reduction] |
| TOTAL | $91,184.42 | [$103,965.66 reduction] |

ORDER - 2

The court has reviewed and considered all of the excellent submittals and the exhibits reflecting the fees and expenses sought.

**DISCUSSION.**

The first step in determining reasonable fees is to calculate the lodestar figure, by taking the number of hours reasonably expended on the litigation and multiplying it by the appropriate hourly rate. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). The Court should exclude overstaffed, redundant, or unnecessary time. *Id.* at 434. The Court must also consider the extent of Plaintiffs' success, as that is a "crucial factor" in determining an appropriate award. *Id.* at 440.

After determining the lodestar figure, the Court should then determine whether to adjust the lodestar figure up or down based on any *Kerr* factors that have not been subsumed in the lodestar calculation.[1] *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 69-70 (9th Cir. 1975) *cert. denied*, 425 U.S. 951 (1976).

**A. Reasonable Hourly Rate.**

In determining hourly rates, the Court must look to the "prevailing market rates in the relevant community." *Bell v. Clackamas County*, 341 F.3d 858, 868 (9th Cir. 2003). The rates of comparable attorneys in the forum district are usually used. *See Gates v. Deukmejian*, 987 F.2d 1392, 1405 (9th Cir. 1992). In making its calculation, the Court should also consider the experience, skill, and reputation of the attorney requesting fees. *Schwarz v. Sec'y of Health &*

---

[1] The twelve *Kerr* factors are: (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the 'undesirability' of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases. *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 69-70 (9th Cir. 1975), *cert. denied*, 425 U.S. 951 (1976). These considerations are consistent with Washington Rule of Professional Conduct 1.5.

*Human Servs.*, 73 F.3d 895, 906 (9th Cir. 1995). The Court may rely on its own knowledge and familiarity with the legal market in setting a reasonable hourly rate. *Ingram v. Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011).

Mr. Booth's expert agrees that the hourly rates sought by the City's attorneys and reflected in the fee request are reasonable, and the Court agrees.

**B. Reasonable Number of Hours.**

"By and large, the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case; after all, he won, and might not have, had he been more of a slacker." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008). In determining the reasonable number of hours, the Court may exclude those hours that are excessive, redundant, or otherwise unnecessary. *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983); *Welch v. Metropolitan Life Ins. Co.*, 480 F.3d 942, 946 (9th Cir. 2007).

Booth does not argue that the hours claimed were not actually spent in this case. Instead, the bulk of his objection is that some of the hours claimed were incurred in defending the claims and allegations in Mr. Hernandez's Complaint, and are not directly attributable to the mistrial. He also objects to some time as duplicative, and some as unsupported. These concerns are noted and discussed below.

    1. <u>Pre-Trial Fees and Expenses.</u>

        *a. Witness Prep – Attorneys' Fees.*

The City seeks reimbursement for 105 hours of time, or $25,885 in fees, for witness communication, preparation and scheduling. It claims that this work was lost as the result of the mistrial on the fourth day of trial. Booth argues persuasively that not all of this work was wasted, and not all of it will have to be repeated in preparation for the next trial. He argues that

the only time lost is the time the attorneys will have to spend re-acquainting themselves with their prior work product in preparation for the re-trial.

The Court agrees that some of the work done and for reimbursement is sought will be usable in the future—the witness outlines and themes, outlines for opening statements and the like.

But much of the work will have to be done over, simply because of the passage of time. These witnesses will have to be re-prepared. In the court's view, 25% of the work performed can be re-used without repetition. The remaining 75% will have to be repeated, and is therefore effectively lost due to the mistrial. The Court will order reimbursement of **$20,708** for this category of fees.

      *b.   Witness and Expert expenses and fees.*

The City seeks $4131.35 for witness preparation fees (primarily travel to Vancouver), and $2160 in expert fees.

Booth's expert opines that the work is not wasted because the City still had to finalize preparations in advance of trial. The Court disagrees. The witness preparations will have to be repeated, and even if the repeated prep sessions are nominally shorter, presumably the cost of travel will be essentially unchanged. The experts' fees are costs that have already been incurred, without their testimony at trial, and without any resolution of the case. These costs are entirely lost due to the mistrial.

The Court will award the preparation costs of **$4131.35**, and expert fees of **$2160**.

      *c.   Legal Assistants' Pretrial Efforts.*

The City seeks $2625 for the efforts of its attorneys' legal assistants in communication with, preparing and scheduling witnesses. Mr. Booth concedes that these efforts were reasonable

and that the benefit of them is lost as the result of the mistrial.  The Court will award **$2625** for these efforts.

   d.  *Perpetuation Deposition Designation.*

The City seeks $3537.50 for efforts incurred in designating portions of testimony perpetuation depositions.  Mr. Booth's position is that these efforts were reasonably incurred but were not lost due to the mistrial.  The Court agrees.  This effort is a clear example of work that will not have to be re-visited in the re-trial of this matter.  The Court will **not award** these fees.

   e.  *General Trial Preparations.*

The City seeks reimbursement for an additional 60 hours, or $15,000, for general trial preparations that will have to be repeated for the re-trial of this matter.  Mr. Booth opposes a portion of this request, arguing first that these efforts are at least partially subsumed in the witness prep time outlined above, and further that not all of this time will have to be repeated due to the mistrial.  He argues that 25 hours is reasonable, and that that amount is sought under the "anticipated prospective attorney hours" category, discussed below.  The Court concludes that the City's estimate is high and possibly duplicative, and that Mr. Booth's estimate is too conservative. The Court will award 40 hours, or **$10,000**, for this category.  This amount is separate from the category discussed below.

   f.  *Attorney Trial Participation*

The City seeks 155.8 hours, or a total of $37,760, for the time its three attorneys spent in trial prior to the mistrial.  Mr. Booth's primary dispute with this time is that the case did not warrant three full time attorneys during trial.  He correctly points out that insurers typically do not permit this sort of staffing.  He advocates an award of $22,200 for attorney time in trial.

The Court recognizes that these fees were actually incurred, and most, if not all, of this time was lost due to the mistrial.  Nevertheless, it will reduce the total fee request by 20% to

1 | reflect the potential overstaffing of the attorneys at trial. The Court will therefore award **$30,208**
2 | for these fees.

3 |       g. *Various Other Trial Expenses.*

4 |       The City seeks reimbursement for three additional categories of expenses: for Debra
5 | Quinn ($1335.62); food and lodging ($3182.29) and Prolumina expenses re witness prep and
6 | jury selection ($10791.79). Mr. Booth disputes as unsupported the Quinn expenses, but it is
7 | clear that she incurred expenses and that that time is lost. The amount she seeks is reasonable
8 | and is awarded.

9 |       Mr. Booth does not dispute the food and lodging expenses and those too are awarded.

10 |       Mr. Booth does dispute the Prolumina trial prep expenses, noting that some of them were
11 | incurred prior to the trial and mistrial and arguing that some of the benefit of those expenses can
12 | be "re-used" on retrial. The concern is not unfounded, but the raw costs of a trial that is not
13 | completed due to the misconduct of one party is in fact a lost cost to the other. The Court will
14 | award these costs, in the total amount of **$15,939.70.**

15 |                                      \*\*\*

16 |       Of the $109,038.55 sought by the City in this first category, the court will award
17 | **$85,772.05.**

18 |    2. <u>Fees Anticipated for Re-Trial.</u>

19 |       The City next seeks 80 hours, or $19,285, for fees it will incur in preparing for the re-trial
20 | necessitated by the mistrial. This compares to 205 hours it spent in attorneys fees in preparing
21 | for the first trial.

22 |       Mr. Booth argues that this category is duplicative of the ; He points out that the American
23 | rule provides that parties generally bear their own fees, and it would not be fair for him to pay

24 |

1  the City's fees to prepare for trial both times.  Absent the mistrial, even if the City prevailed, it

2  would have to pay its own attorneys' fees.

3  The Court will not award the anticipated fees for preparing to re-try the case.

4  The City also seeks $3125 for similarly required administrative and paralegal support for

5  the new trial. For the same reason, this amount is not awarded.

6     3.  <u>Post trial fees through the contempt hearing.</u>

7  The City's next category of requested fees and costs concerns the period after the mistrial

8  through the contempt hearing.  It seeks **$33,447.09** for the work performed by its attorneys in

9  preparation for that hearing.  Mr. Booth does not dispute the reasonableness of this amount and it

10  is awarded.

11     4.  <u>Fees incurred after the contempt hearing.</u>

12  The final category of fees the city seeks is those incurred after the contempt hearing.  It

13  seeks $30,254.44, which includes $11,715.69 for attorneys' fees it incurred directly and an

14  additional $18,538.75 for fees it paid to attorney Chris Hardman[2] to represent Ms. Quinn in this

15  matter.   Mr. Booth does not dispute the **$11,715.69** in fees by Mr. Christie's firm, and those

16  fees are awarded.

17  He does dispute reimbursement for the fees paid to Mr. Hardman for personally

18  representing Ms. Quinn.  He argues that the Christie firm represented Ms. Quinn adequately and

19  that the "tactical decision" to retain Mr. Hardman—who did not participate in any portion of the

20  trial or the contempt hearing—is not one that should reasonably be borne by Mr. Booth.

21  While it does not appear that Mr. Hardman's representation directly influenced the trial

22  or the hearing, the core issue in the mistrial and the contempt hearing was Mr. Booth's

---

23

24  [2] Most of Mr. Hardman's work was performed prior to the contempt hearing, but the City apparently paid his fees after the hearing.  *See* Dkt. #304.

inappropriate interaction with Ms. Quinn.  Mr. Booth cannot be heard to complain very loudly about the efforts she undertook to protect herself from these actions.  The Court will reduce the amount of Mr. Hardman's fees by 20%, and award **$14,831** for these fees.

**C.  Further Adjustment is not required.**

The final step in an EAJA (or other) fee assessment is whether to enhance or reduce this lodestar figure based on the Court's evaluation of those *Kerr* factors not subsumed in the lodestar calculation.  *Ballen v. City of Redmond*, 466 F.3d 736, 746 (9th Cir. 2006).  The analysis above and the resulting lodestar amount take many of the relevant factors into account. After reviewing all of the factors, all of the entries, and Mr. Booth's objections, the Court concludes that no additional reduction or adjustment in the total fee award is warranted.

The amounts awarded reflect the defendant's concerns about efficiency, duplicative time, and work that would have been performed in any event.  These concerns are factored into and reflected in the total award.  This table reflects Court's award in each of the categories described above:

| CATEGORY | CITY | BOOTH | AWARD |
| --- | --- | --- | --- |
| Fees and Expenses Through Mistrial | $109,038.55 | $46,021.64 | $85,772.05 |
| Fees and Costs for New Trial | $22,410.00 | -0- | -0- |
| Fees Through Contempt Hearing | $33,447.09 | $33,447.09 | $33,447.09 |
| Fees After Contempt Hearing | $30,354.44 | $11,715.69 | $26,546.29 |
| TOTAL | $195,150.08 | $91,184.42 | **$145,765.43** |

Accordingly, the total award for fees and costs is **$145,765.43 .**

The Clerk shall prepare a judgment reflecting this award of fees and costs.

ORDER - 9


1  Judge Leighton RECUSES himself from further proceedings in this case, and the case
2  shall be reassigned for re-trial.

3  IT IS SO ORDERED.

4  Dated this 15th day of February, 2013.

                                RONALD B. LEIGHTON
                                UNITED STATES DISTRICT JUDGE