UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| ROLANDO HERNANDEZ,<br><br>                Plaintiff,<br><br>     v.<br><br>CITY OF VANCOUVER and MARK TANNINEN,<br><br>                Defendants. | CASE NO. C04-5539 BHS<br><br>ORDER DENYING DEFENDANT'S MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT OR, IN THE ALTERNATIVE, FOR A NEW TRIAL |

This matter comes before the Court on Defendant City of Vancouver's ("City") motion for judgment notwithstanding the verdict or, in the alternative, a new trial (Dkt. 490). The Court has considered the pleadings filed in support of and in opposition to the motion and the remainder of the file and hereby denies the motion for the reasons stated herein.

## I. PROCEDURAL HISTORY

On April 15, 2014, the Court began a ten-day trial on Plaintiff Rolando Hernandez's ("Hernandez") claims against the City and co-Defendant Mark Tanninen

1 ("Tanninen"). Dkt. 409. Hernandez's claims were as follows: (1) disparate treatment in violation of federal law against the City; (2) disparate treatment in violation of state law against the City; (3) hostile work environment in violation of federal law against the City; (4) hostile work environment in violation of state law against the City; (5) retaliation in violation of federal law against the City; (6) retaliation in violation of state law against the City; and (7) a conspiracy in violation of federal law against the City and Tanninen. Dkt. 382. On the last day of trial, Hernandez withdrew his disparate treatment claims and his federal retaliation claim. Dkt. 444. On April 29, 2014, the jury returned a verdict in favor of Hernandez on both hostile work environment claims and the state retaliation claim and in favor of Tanninen and the City on the retaliation claim. Dkt. 450.

On August 4, 2014, the City filed a motion for judgment notwithstanding the verdict or, in the alternative, a new trial. Dkt. 490. On August 25, 2014, Hernandez responded. Dkt. 516. On August 29, 2014, the City replied. Dkt. 520.

## II. DISCUSSION

As a threshold matter, the City requests that the Court disregard certain evidence. Dkt. 490 at 21–26. With regard to the Equal Employment Opportunity Commission's letter of determination ("LOD"), the Court declines to depart from precedent. The Court recognizes the circuit split on the issue of admissibility. *See, e.g., Smith v. Massachusetts Institute of Technology*, 877 F.2d 1106, 1113 (1st Cir. 1989) ("a rule of *per se* admissibility of the [EEOC] investigative file would clearly undercut the district court's function as independent fact-finder"). Moreover, the EEOC recognizes that employers must "blunt the impact that the EEOC's reasonable-cause LOD may have on the jury,"

but states that "the enforcement of the statute by a trial *de novo* renders an examination of the [EEOC's] investigation unnecessary and inappropriate." Regardless of the other circuits' reasonable views and even the EEOC's view, the Court is bound by the Ninth Circuit's precedent and denies the City's request to ignore this evidence.

The Court addresses the City's other evidentiary requests below.

**A.  JMOL**

A jury's verdict must be upheld if it is supported by substantial evidence. *Wallace v. City of San Diego*, 479 F.3d 616, 624 (9th Cir. 2007). Evidence is substantial if it is adequate to support the jury's conclusions even if drawing a contrary conclusion from the evidence is possible. *Id*. In ruling on a motion for judgment as a matter of law, the Court may not make credibility determinations or weigh the evidence. *Winarto v. Toshiba Am. Elecs. Components, Inc*., 274 F.3d 1276, 1283 (9th Cir. 2001). The Court must draw all inferences from the evidence in the light most favorable to the nonmoving party, and it must disregard all evidence favorable to the moving party that the jury was not required to believe. *Id.* The Court may not substitute its judgment for that of the jury. *Id*. It may grant judgment as a matter of law only when the evidence, appropriately viewed, permits only one reasonable conclusion, which runs contrary to the jury's verdict. *Wallace*, 479 F.3d at 624.

**1.  Hostile Work Environment**

To establish a hostile work environment claim, Hernandez must show (1) that he was subjected to conduct based on his race or national origin; (2) that the conduct was unwelcome; and (3) that the conduct was "sufficiently severe or pervasive to alter the

1 conditions of his employment and create an abusive work environment." *Vasquez v.
2 County of Los Angeles*, 349 F.3d 634, 642 (9th Cir. 2003). The elements are substantially
3 similar under the Washington Law Against Discrimination ("WLAD"). *Glasgow v.
4 Georgia Pac. Corp.*, 103 Wn.2d 401, 693 P. 2d 708 (1985); RCW 49.60.210.

5       In this case, the City argues that Hernandez failed to show that he was
6 discriminated against because of his race and that the City was liable for the hostile work
7 environment, if such an environment existed. Dkt. 490 at 26–29. First, The City asserts
8 that Hernandez's "heritage alone is insufficient to infer that the mechanics treated
9 [Hernandez] any particular way because of his race." Dkt. 490 at 27. The Court agrees
10 that heritage alone is insufficient to state a claim. However, racist remarks against that
11 heritage are sufficient evidence of animus even if the remarks were not directed at
12 Hernandez. *Cordova v. State Farm Ins. Companies*, 124 F.3d 1145, 1149 (9th Cir.
13 1997); *Chuang v. University of California Davis, Bd. of Trustees*, 225 F.3d 1115, (9th
14 Cir. 2000). Moreover, the law of the case is that Hernandez submitted sufficient
15 evidence to establish his claim on this issue:

16       Hernandez's allegations of hostility, if credited, describe conduct that "pollute[d] [Hernandez's] workplace, making it more difficult for [him] to
17       do [his] job, to take pride in [his] work, and to desire to stay on in [his] position." *Steiner v. Showboat Operating Co.*, 25 F.3d 1459, 1463 (9th Cir.
18       1994).

19       Dkt. 77–2 at 5. Hernandez presented that evidence to the jury. Dkt. 516 at 5–6.
20 For example, Helen Harden testified that Deputy Fire Chief Steve Streissguth made
21 disparaging remarks about Hispanics such as "Hose A and Hose B, Hispanic, Spick,
22

Mexican, [and] wetback." Tr. 1137. Ms. Harden testified that the conversations occurred frequently and that the remarks were directed at Hernandez "because there was no other Hispanic employee." Tr. 1138. Therefore, based on the evidence favorable to Hernandez, the Court finds that Hernandez submitted sufficient evidence to uphold the verdict on the issue of whether he was subjected to unwelcome conduct based on his national origin.

Second, the City argues that the only evidence in support of the City's liability for a hostile work environment was the testimony of Plaintiff's Human Resource expert, Patty Harrington. Dkt. 490 at 28. While Hernandez fails to address the City's argument on the issue of the City's liability, Hernandez does argue that there was no error in allowing Ms. Harrington's testimony. Dkt. 516 at 18. The Court finds that exclusion of certain testimony is grounds for a new trial, but not grounds for a directed verdict. With regard to the sufficiency of the evidence, the Court finds that Hernandez submitted sufficient evidence to show that the City was liable for a hostile work environment because the activity was reported and the jury could reasonably conclude that the City failed to take reasonably prompt action to correct the conduct. *Swinton v. Potomac Corporation*, 270 F.3d 794, 803-804 (9th Cir. 2001). Therefore, the Court denies the City's motion for a directed verdict on this issue.

**2.    Retaliation**

Under Washington law, it is unlawful for an employer to "'discharge, expel, or otherwise discriminate against any person because he or she has opposed any practices forbidden by this chapter.'" *Kahn v. Salerno*, 90 Wn. App. 110, 128, 951 P.2d 321

(1998) (citing RCW 49.60.210(1)).  A plaintiff must show that retaliation was a substantial factor behind the adverse action.  *Kahn*, 90 Wn. App. at 128–29.  "Ordinarily, proof of the employer's motivation must be shown by circumstantial evidence because 'the employer is not apt to announce retaliation as his motive.'"  *Id*. at 130 (quoting *Wilmot v. Kaiser Aluminum & Chem. Corp.*, 118 Wn.2d 46, 69 (1991)).  Proximity in time between opposition and the adverse action is also evidence of improper motive.  *Kahn*, 90 Wn. App. at 130–31.

In this case, the City argues that there was insufficient evidence to support the jury's verdict of retaliation.  First, the City contends that the span of seven months between the protected activity and the adverse action is too long to support an inference of retaliation.  "[C]ourts should not engage in a mechanical inquiry into the amount of time between the [protected activity] and alleged retaliatory action."  *Anthoine v. North Central Counties Consortium*, 605 F.3d 740, 751 (9th Cir. 2010).  The City has failed to cite authority for the proposition that seven months is *per se* too long to support temporal proximity.  In such an absence of authority, the jury was free to weigh the circumstantial evidence presented by Hernandez and reach the conclusion that the City retaliated against Hernandez.  In other words, Hernandez presented sufficient evidence to support the verdict because he submitted evidence that the harassment began a few months after the protected activity.  Therefore, the Court denies the City's motion for a directed verdict on this issue.

Second, the City argues that it cannot be liable for retaliation when Hernandez requested the transfer.  Dkt. 490 at 31–32.  Hernandez, however, testified that he felt

compelled to agree to the transfer or he would face termination. This testimony is supported by the reprimands Hernandez received during the last months of 2002 for alleged recent incidents and alleged previous incidents dating back to August of 2002. The jury was free to accept the testimony as credible and supporting evidence in reaching a reasonable conclusion that the transfer was an adverse employment action. Therefore, the Court denies the City's motion for a directed verdict on this issue.

**B.     New Trial**

A district court has the discretion to grant a new trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). Because "Rule 59 does not specify the grounds on which a motion for a new trial may be granted," courts are "bound by those grounds that have been historically recognized." *Zhang v. Am. Gem Seafoods, Inc*., 339 F.3d 1020, 1035 (9th Cir. 2003). "Historically recognized grounds include, but are not limited to, claims 'that the verdict is against the weight of the evidence, that the damages are excessive, or that, for other reasons, the trial was not fair to the party moving.'" *Molski v. M.J. Cable's, Inc*., 481 F.3d 724, 729 (9th Cir. 2007) (*quoting Montgomery Ward & Co. v. Duncan,* 311 U.S. 243, 251 (1940)).

    **1.     Hostile Work Environment**

In this case, the City argues that, if the Court disregards certain evidence, then "the weight of the evidence supporting [Hernandez's] hostile work environment claims is simply too light." Dkt. 490 at 29. With regard to the evidence in question, the City requests that the Court disregard (1) racist statements made by Deputy Fire Chief Martin

James, Fire Chief Donald Bivins, and Deputy Chief Streissguth; (2) Dennis Duff's interview notes; (3) Testimony of Penny Harrington; and (4) Tanninen's statements. Dkt. 490 at 21–26.

### a. Employee's statements

The City argues that the statements of DC James are irrelevant because they were made when he no longer was a City employee. Dkt. 490 at 21. The City asserts that the Court ruled that "the only admissible James statements were those made while he was a City employee or while he was working in the Fire Department Headquarters." Dkt. 490 at 10. While the City is correct at to James's actual statements, they are incorrect as to other employees' discussions regarding any discriminatory statement made by James. The Court ruled that James's statements may be admissible if they were made in the company of relevant supervisors and the supervisors actively engaged in a conversation regarding any statement. Dkt. 482 at 49–51. Susan Collins's testimony included both of these facts. Tr. 254–280. Although the challenged statements were not made by James, the conversation in the car involved prior statement made by James and the City employees were joking about the disparaging statements. *Id*. During trial, the City objected on the grounds that the testimony conflicted with prior testimony, and the Court ruled that these issues were for cross-examination. Tr. 281–284. Therefore, the Court concludes that it was not an error to admit James's statements and will not disregard this evidence.

The City also argues that the statements of DC James, Chief Bivins, and DC Streissugth are either irrelevant or, if relevant, inadmissible under Fed. R. Evid. 403.

Dkt. 490 at 21–22.  The City argues that the statement should only have been admitted as evidence in support of Hernandez's disparate treatment claim.  *Id*.  The law of the case, however, is that evidence showing that "superiors and co-workers had made racist comments regarding Hispanics generally" is relevant to Hernandez's hostile work environment claim.  Dkt. 77–2 at 9.  As for the Court's Rule 403 ruling, the Court stands by its rulings admitting this evidence.  Therefore, the Court denies the City's request to ignore this evidence.

### b. Dennis Duff's Interview Notes

The City argues that the Court erred in admitting Dennis Duff's interview notes. Dkt. 490 at 23–24.  The City asserts that "plaintiff was not offering the statements for impeachment purposes; he offered them for the truth of the matter asserted to support his claim that the drill was sabotaged."  *Id*.  The City is incorrect.  While the notes may have not actually been used for impeachment purposes during cross-examination of Debra Quinn, they were admitted for impeachment purposes.  Tr. 1792.  Specifically, the notes were used to impeach Ms. Quinn's statement that she did not have "information in [her] business records in March of 2002 that substantiated Mr. Hernandez's claims about [Hernandez's] drill . . . ."  Tr. 1761.  The Court also stands by its Rule 403 ruling admitting these notes.  Therefore, the Court denies the City's request to ignore this evidence.

### c. Testimony of Penny Harrington

In this case, Defendants argue that "this Court abused its discretion in failing to strike Harrington's testimony" because it was not reliable.  Dkt. 490 at 24–25.  The City

1  objects to Ms. Harrington's opinion that the City's HR investigations were inadequate
2  "without first reviewing the entire set of investigation materials." *Id.* After Hernandez's
3  attorney examined Pennington as to her qualifications, he tendered her as an expert in
4  employment practices and investigations for the time period between 2000 and early
5  2003. The Court concluded that Pennington demonstrated sufficient expertise in
6  investigations of employment race and sex discrimination and that her expertise would
7  assist the jury in understanding the standards concerning the proper investigation of
8  employment discrimination. The City's attorney sought and obtained permission of the
9  Court to voir dire Pennington as to her means and methods as an issue separate from the
10 Court's conclusion that she qualified as an expert but having not ruled on whether she
11 could give an opinion on the quality of the investigations. The voir dire was limited to
12 inquiries concerning her familiarity with professional publications and other materials she
13 had reviewed relating to standards. However, the City did not ask questions concerning
14 her means and methods in reviewing the evidence in this case. In overruling the City's
15 objection the Court made it clear that at that point in the examination a foundation had
16 not yet been laid with respect to the sufficiency of her means and methods in reviewing
17 the investigations in this case.
18     When Hernandez's attorney began asking questions concerning deficiencies in the
19 investigation, rather than seeking to voir dire Pennington, the City's attorney simply
20 inquired as to whether this was the time to raise his FRE 702 objection. Because there
21 had not been any doubts raised in the direct examination concerning the sufficiency of
22 Pennington's review of the investigation files, the objection was overruled. It was only in

cross examination that the City was able to raise questions about the sufficiency of Pennington's review of the investigation files. When cross examination was completed and it became evident that Pennington could not remember whether she reviewed the entire investigation files, the Court *sua sponte* raised the question as to whether a sufficient foundation had been laid in order to express an opinion. The City made a motion to strike her testimony. The Court reserved ruling on it, but allowed Hernandez to provide evidence that Pennington had reviewed the complete investigation files.

On the next trial day Hernandez's attorney represented to the Court that over the weekend he had furnished Pennington with the complete investigation files and that she was prepared upon recall to testify that these were the files she reviewed except that she could not recall reviewing all of the "Salter" investigation files. The Court ruled that it would allow that testimony. Rather than seek to discredit her through cross examination, the City made a tactical decision and elected to withdraw its motion to strike. Based on the City's tactical decision to withdraw its motion, the Court denies the instant motion on the issue of whether the Court abused its discretion in admitting Pennington's testimony and opinions.

Additionally, the Salter investigation file that the City contends was not reviewed was the least significant investigation included in Harrington's underlying data. Therefore, the Court denies the City's motion on the issue of whether the Court committed error in admitting the expert testimony. Even if the Court committed error, the Court concludes that the error was harmless because the expert's failure, if any, was of little to no significance.

ORDER - 11

#### d. Tanninen's Statements

In this case, the City argues that the Court should disregard the statements of Tanninen. Dkt. 490 at 25–26. First, the City argues that the Court should have dismissed the claim on summary judgment or on their Rule 50(a) motion. *Id*. This argument is without merit. Based on the evidence viewed in the light most favorable to Hernandez, the law of the case is that material questions of fact existed on this claim. Dkt. 77-2. With regard to Rule 50(a), Hernandez had a legally sufficient basis for the jury to find in his favor on this claim because he presented the evidence at trial that created material questions of fact on summary judgment. Therefore, even if it was appropriate to revisit these questions of law, the Court declines to conclude that either one was erroneous.

Second, the City argues that Tanninen's statements may only be offered against him and not against the City. The City's argument, however, is based on agency law and not conspiracy law. Dkt. 490 at 26. Statements of co-conspirators are admissible in criminal trials as well as civil trials. Fed. R. Evid. 1101, 1102. Even if the evidence was only admissible for certain issues, the City failed to request a limiting instruction for these statements. Therefore, the Court denies the City's request to ignore this evidence.

#### e. Hernandez's Claim

After reviewing the evidence and the alleged errors, the Court concludes that the jury's verdict was not against the weight of the evidence and the City received a fair trial considering all the circumstances. Therefore, the Court denies the City's motion for a new trial.

## 2. Retaliation

In this case, the City argues that the Court should grant the City a new trial on Hernandez's retaliation claim "because the weight of the evidence does not support a finding of retaliation, and because of plaintiff counsel's misconduct during closing." Dkt. 490 at 32. With regard to the former, the Court disagrees. In the Court's view, Hernandez's strongest claim was for retaliation. For example, Hernandez's prior reviews showed that he performed good work. Yet, after he filed the discrimination complaint, he began to receive written reprimands for his work product. The November 5, 2002 reprimand was for work completed in August and was coincidently filed during discussions regarding Hernandez's transfer out of the Fire Shop. Moreover, Hernandez testified about being assigned to generally undesirable tasks and being ostracized by co-workers. Therefore, the Court denies the City's motion as to the weight of the evidence.

With regard to Mr. Boothe's conduct during closing, this was a clear violation of the Court's oral ruling. The Court denied Hernandez an instruction on temporal proximity, but stated that counsel may argue the theory during closing. In closing, counsel showed a demonstrative exhibit that cited Ninth Circuit case law regarding temporal proximity and referencing a specific Ninth Circuit case. The Court was astounded that Mr. Boothe considered the Court's ruling as a green light to cite a case as well as case law to the jury, when as an experienced trial lawyer he should have know that only the Court is authorized to instruct the jury on the law. Nonetheless, the Court finds the error harmless because it was a close question on whether Hernandez was

entitled to a temporal proximity instruction.[1]  The momentary reference by counsel was not so prejudicial that the City did not receive a fair trial.  Therefore, the Court denies the City's motion on this issue.

### III. ORDER

Therefore, it is hereby **ORDERED** that the City's motion for judgment notwithstanding the verdict or, in the alternative, a new trial (Dkt. 490) is **DENIED**.

Dated this 21st day of October, 2014.

BENJAMIN H. SETTLE
United States District Judge

---

[1] Hernandez received the first written reprimand as an employee of the Fire Department a couple months after he made his complaint that his drill was damaged as sabotage motivated by racial animus.