1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

ROLANDO HERNANDEZ,

             Plaintiff,

     v.

CITY OF VANCOUVER and MARK
TANNINEN,

            Defendants.

CASE NO. C04-5539 BHS

ORDER GRANTING IN PART
AND DENYING IN PART
PLAINTIFF'S PETITION FOR
ATTORNEY FEES

This matter comes before the Court on Plaintiff Rolando Hernandez's

("Hernandez") petition for attorney fees (Dkt. 491). The Court has considered the

pleadings filed in support of and in opposition to the motion and the remainder of the file

and hereby grants in part and denies in part the motion for the reasons stated herein.

**I. PROCEDURAL HISTORY**

On August 24, 2004, Hernandez filed a complaint against Defendants City of

Vancouver ("City") and Mark Tanninen ("Tanninen") (collectively "Defendants")

explicitly asserting six claims, but some of the claims involved multiple sub-claims.  Dkt.

1.  A fair reading of the complaint shows that Hernandez asserted ten claims against the City and three claims against Tanninen.  The claims against the City were as follows: (1) hostile work environment in violation of 42 U.S.C. §2000e; (2) hostile work environment in violation of Title 49.60 RCW; (3) retaliation in violation of 42 U.S.C. § 2000e; (4) retaliation in violation of Title 49.60 RCW; (5) disparate treatment in violation of 42 U.S.C. § 2000e; (6) disparate treatment in violation of Title 49.60 RCW; (7) violation of 42 U.S.C. §1981; (8) failure to adequately protect plaintiff in violation of 42 U.S.C. §1983; (9) conspiracy in violation of 42 U.S.C. § 1985; and (10) intentional infliction of emotional distress.  The claims against Tanninen were as follows:  (1) failure to adequately protect plaintiff in violation of 42 U.S.C. §1983; (2) conspiracy in violation of 42 U.S.C. § 1985; and (3) intentional infliction of emotional distress.

On June 16, 2006, the Court granted summary judgment on all claims.  Dkt. 66. On May 7, 2008, the Ninth Circuit reversed.  Dkt. 77-2.

On January 21, 2009, Hernandez appealed a discovery decision that was not in his favor.  Dkt. 106.  On May 12, 2010, the Ninth Circuit issued a writ of mandamus essentially reversing the Court's discovery order.  Dkt. 140.

On June 11, 2012, trial began before the Honorable Ronald B. Leighton, United States District Judge.  Dkt. 268.  On June 14, 2012, Judge Leighton granted Defendants' motion for a mistrial based on the actions of Hernandez's sole attorney, Thomas Boothe. Dkt. 272.  On October 12, 2012, Judge Leighton found Mr. Boothe in contempt of court and ordered sanctions.  Dkt. 301.

1    On November 1, 2012, attorney Judith Lonnquist appeared on behalf of
2    Hernandez.  Dkt. 307.

3    On February 19, 2013, the case was transferred to the undersigned.  Dkt. 312.

4    On February 25, 2013, Mr. Boothe appealed the order of contempt and sanctions.
5    Dkt. 315.  The appeal is currently pending.

6    On April 15, 2014, the Court began a ten-day trial.  Dkt. 409.  At that time,
7    Hernandez's seven claims were as follows: (1) disparate treatment in violation of federal
8    law against the City; (2) disparate treatment in violation of state law against the City; (3)
9    hostile work environment in violation of federal law against the City; (4) hostile work
10   environment in violation of state law against the City; (5) retaliation in violation of
11   federal law against the City; (6) retaliation in violation of state law against the City; and
12   (7) a conspiracy in violation of federal law against the City and Tanninen.  Dkt. 382.  On
13   the last day of trial, Hernandez withdrew his disparate treatment claims and his federal
14   retaliation claim, leaving four claims for the jury to consider.  Dkt. 444.  On April 29,
15   2014, the jury returned a verdict in favor of Hernandez on his hostile work environment
16   and retaliation claims against the City and in favor of the Defendants on the conspiracy
17   claim.  Dkt. 450.

18   On August 4, 2014, Hernandez filed the instant motion requesting an award of
19   fees under federal and state law.  Dkt. 491.  On August 5, 2014, Ms. Lonnquist filed a
20   memorandum in support of a multiplier for her fees.  Dkt. 506.  On September 29, 2014,
21   the City responded.  Dkt. 526.  On October 7, 2014, Hernandez replied.  Dkt. 534.

22

## II. DISCUSSION

In any motion requesting reasonable attorney's fees, the Court has a duty "to make an independent decision as to what represents a reasonable amount of attorney's fees." *Nordstrom v. Tampourlos*, 107 Wn.2d 735, 744 (1987); *Mahler v. Szucs*, 135 Wn.2d 398, 436 (1998). Trial courts must also create an adequate record for review of fee award decisions. *Mayer v. City of Seattle*, 102 Wn. App. 66, 79 (2000).

Courts generally use the lodestar method for determining the appropriate value of plaintiff's attorney's fee award. *Bowers v. Transamerica Title Ins. Co.*, 100 Wn.2d 58 (1983); *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 555 (2010). "The lodestar award is arrived at by multiplying a reasonable hourly rate by the number of hours reasonably expended on the matter." *Scott Fetzer Co. v. Weeks*, 122 Wn.2d 141, 149 (1993); *Jordan v. Multnomah County*, 799 F.2d 1262, 1265 (9th Cir.1986).

### A.      Multiplier

"The contingency adjustment is based on the notion that attorneys generally will not take high risk contingency cases, for which they risk no recovery at all for their services, unless they can receive a premium for taking that risk." *Chuong Van Pham v. City of Seattle, Seattle City Light*, 159 Wn.2d 527 (2007).

> In adjusting the lodestar to account for this risk factor, the trial court must assess the likelihood of success at the outset of the litigation. This is necessarily an imprecise calculation and must largely be a matter of the trial court's discretion.

*Bowers*, 100 Wn.2d at 598–99.

1    In this case, the Court declines to award a contingency multiplier.  At the

2    beginning of Ms. Lonnquist's involvement, the case was extremely low risk compared to

3    the situation where an attorney accepts a case before the complaint is even filed.  First, it

4    was clear that the case would go to trial and there was no risk that her efforts would be

5    wasted by dismissal via dispositive motion.  Second, discovery had already been

6    completed and she had a full view of the case, including Defendants' evidence and

7    litigation positions.  Therefore, under these circumstances, the Court denies Ms.

8    Lonnquist's request for a contingency multiplier.

9    **B.    Unsuccessful Claims**

10    "The congressional intent to limit awards to prevailing parties requires that these

11    unrelated claims be treated as if they had been raised in separate lawsuits, and therefore

12    no fee may be awarded for services on the unsuccessful claim."  *Hensley v. Eckerhart*,

13    461 U.S. 424, 435 (1983).  Related claims "involve a common core of facts or will be

14    based on related legal theories."  *Id*.  "[T]he district court can impose a small reduction,

15    no greater than 10 percent—a 'haircut'—based on its exercise of discretion and without a

16    more specific explanation."  *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th

17    Cir. 2008).  The specific explanation need not "be elaborate," but "it must be clear . . . ."

18    *Id*.

19    In this case, Hernandez alleged, prosecuted, forfeited, and ultimately failed to

20    prevail on claims that are unrelated to the claims upon which he prevailed.  For example,

21    Hernandez's conspiracy claim was unrelated to his employment discrimination and

22    retaliation claims.  Hernandez alleged that Defendants conspired to "to subvert the

ORDER - 5

1  investigation into the harassment complained of by or on behalf of [Hernandez]."  Dkt. 1,

2  ¶ 8.3.  In the trial brief, Hernandez presented his claim as follows:

3        Tanninen was a private citizen, no longer employed by the City of
        Vancouver, at the time he talked with Streissguth. As a result of that
4        conversation, he agreed not to take any further action in support of
        Hernandez's claim on the basis that it would be better for everybody if he
5        did not.

6  Dkt. 382 at 26.  The conspiracy claim was based on a phone conversation that occurred

7  after Hernandez obtained an attorney and revolved around the theory that the object of

8  the conspiracy was to subvert any investigation into possible employment discrimination.

9  On the other hand, his successful employment claims were based on facts which occurred

10  during his work at the City's departments.  These claims are mutually exclusive because

11  a conspiracy to foil an investigation is independent of the actual results of the

12  investigation.  Therefore, the Court denies an award of fees for work on the conspiracy

13  claim.

14        Based on this ruling, the Court concludes that an across-the-board reduction is

15  appropriate because the attorney's billable hours are not separated based on the claims.

16  An argument can be made that Hernandez prevailed on only two of three claims that went

17  to the jury because the federal and state hostile work environment claims are virtually

18  identical.  An across-the-board reduction of 33% would seem appropriate under that

19  theory.  The Court, however, is mindful of the Ninth Circuit's 10% haircut.  In light of

20  that precedent, the Court concludes that a 15% reduction across the board is appropriate

21  because the conspiracy claim was one of seven claims that ultimately went to trial.  This

22  reduction shall apply to allowable fees and not to the requested fees.  Moreover, denying

1   fees on the conspiracy claims results in denying fees for the appeal of the discovery

2   matter.  Thus, the Court awards attorneys Phillip Talmage and Sidney Tribe only $6,835.

3   **C.     Timing Issues**

4          The procedural history and reasons for attorney associations in this case present

5   unusual issues that must be addressed.  Although the issue of contempt is on appeal, the

6   record currently reflects that the mistrial was the result of Mr. Boothe's actions of

7   contempt. Therefore, the Court finds that the majority of the fees incurred after the

8   mistrial are Mr. Boothe's responsibility.

9          With regard to Ms. Lonnquist, she performed admirably and obtained great results

10  for Mr. Hernandez.  The Court finds that the hours Ms. Lonnquist expended were

11  reasonable.  What is not reasonable, however, is the expense of two highly experienced

12  litigators during trial.  *See Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir.

13  1986) *amended on other grounds*, 808 F.2d 1373 (1987) ("hours may be reduced . . . if

14  the case was overstaffed and hours are duplicated").  Initially, Mr. Boothe proceeded to

15  trial in this matter as a sole attorney and Mr. Boothe has failed to show that his presence

16  during the entire trial in this matter was either necessary or reasonable.[1]  In any case, this

17  matter would have been completed by one attorney representing Plaintiff but for Mr.

18  Boothe's misconduct. While it is reasonable to bill some number of hours for a transition

19  from Mr. Boothe to Ms. Lonnquist, Mr. Boothe's 2013 billing of 89.10 hours is a more

20  _____

21          [1] This Court has never held an employment discrimination trial with two highly
    experienced attorneys representing the plaintiff.  *Moreno*, 534 F.3d at 1111 (Courts should
22  "compensate counsel at the prevailing rate in the community for similar work; no more, no
    less.")

ORDER - 7

1 than reasonable number of hours to accommodate such a transition.  Therefore, after the

2 mistrial, the Court awards Ms. Lonnquist's fees and Mr. Boothe's fee for 89.10 hours.

3       The Court also recognizes that Mr. Boothe helped Ms. Lonnquiest with trial

4 preparation.  To the extent that Mr. Boothe's work was not duplicative, the Court finds

5 that some fees should be awarded.  In looking over Mr. Boothe's billing records for the

6 early part of 2014, the first thing the Court noticed is that Mr. Boothe's requests included

7 hours for helping Hernandez with a citizenship application.  *See, e.g.,* Dkt. 504-4 at 65.

8 Although Mr. Boothe addressed and voluntarily set aside specific billing instances, he

9 failed to mention the citizenship application hours in either in his brief or in his

10 declaration and the entries are not identified as "(NONBILLED)" as other entries are

11 labled.  *See* Dkt. 504-4 at 88.  Thus, the Court must assume that he is requesting fees for

12 these hours, which is improper and shall not be awarded.  The Court noticed other billing

13 discrepancies, such as driving from Tacoma to Portland twice on April 29, 2014.  *See id*.

14 at 88–89 (3.10 hours each time).  Regardless, the best the Court could decipher from the

15 billing records was Mr. Boothe's preparation for the closing argument.  *Compare id*. (Mr.

16 Boothe's records) *with*  Dkt. 406 at 24–27 (Ms. Lonnquiest's records).  The majority of

17 the motions, briefs, filings, and conferences were team efforts, but Mr. Boothe prepared

18 for the closing by himself.  The Court finds that an additional 10 hours for Mr. Boothe is

19 sufficient to compensate Hernandez's attorneys for non-duplicative work.

20       With regard to the fees regarding the mistrial, Mr. Boothe has voluntarily declined

21 to request fees for trial preparation or the trial.  Dkt. 491 at 5.  Therefore, the Court finds

22 that these fees are not at issue.

1  **D.      Specific Reductions**

2           The City contests certain specific hours billed by Mr. Boothe.  Dkt. 526 at 7–10.

3  For the reasons set forth in the City's brief, the Court finds unreasonable the request for

4  fees regarding the contingent fee agreement (2.5 hours), communications with

5  Hernandez's first attorney, Mr. Ferguson (28.4 hours), and hours billed for the loss of

6  consortium claim (3 hours).  On the other hand, the Court finds reasonable hours billed

7  for consultation with Penny Harrington and hours billed regarding the racial comments

8  because this was admissible evidence at trial.  Therefore, the Court finds that Mr.

9  Boothe's request shall be further reduced by 33.9 hours.

10 **E.      Mr. Boothe's Rate**

11          Mr. Boothe requests that the Court find that his reasonable rate is $450 for all

12 hours billed.  In Washington, it is not an abuse of discretion to award fees based on the

13 current rate instead of the historic rate to compensate attorneys for accepting risky civil

14 rights cases.  *Steele v. Lundgren*, 96 Wn. App. 773, 785–786 (1999).  In this case,

15 however, the Court has found that Mr. Boothe's involvement after the mistrial was

16 unreasonable except for some basic transition work.  The City argues that a reasonable

17 rate in 2012 would be $400.  Dkt. 526 at 10.  The Court agrees.  Therefore, the Court

18 finds that Mr. Boothe's reasonable rate for all reasonable hours shall be $400.

19 **F.      Other Employees**

20          The City challenges fees requested on behalf of paralegals and other attorneys.

21 Dkt. 526 at 11–14.  With regard to the City's specific reduction requests, the Court finds

22 that the work was reasonable and the contested evidence was admissible.  With regard to

1   the across-the-board reduction, the Court agrees with the City that the 15% reduction

2   should apply to all employees.  With regard to time billed for work on the motion to

3   exclude Mr. Boothe, this is a direct result of Mr. Boothe's actions and the hours are

4   unreasonable.  This finding applies to both Ms. Lonnquist's work and to other

5   employees' work as well.  With regard to Mr. Dollman sitting third chair during trial, the

6   Court finds the request reasonable because there were numerous issue throughout trial

7   that required additional research and writing.  Therefore, the award shall reflect these

8   findings.

9                                    **III. ORDER**

10          Therefore, it is hereby **ORDERED** that Hernandez's petition for attorney fees

11   (Dkt. 491) is **GRANTED in part** and **DENIED in part** as stated herein.  The parties

12   shall submit a stipulated proposed award reflecting the rulings herein.  If the Court failed

13   to address an issue, the parties shall submit their respective positions in a single brief

14   accompanying the proposed award.

15          Dated this 29th day of October, 2014.

16

17                                              _____
                                                BENJAMIN H. SETTLE
18                                              United States District Judge

19

20

21

22